## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**GENERAL SECURITY NATIONAL
INSURANCE CORPORATION**

**VERSUS**

**OTTO SALVADOR CELI, SR., ET AL.**

**CIVIL ACTION**

**NO. 23-1682-JWD-SDJ**

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 36) filed by Defendants, Star Transport Logistics, Inc., and Certain Underwriters at Lloyds, London Subscribing to Policy No. 20GU306160-160 (collectively, "Star"). Plaintiff General Security National Insurance Company ("General Security" or "Plaintiff") opposes the motion, (Doc. 58), and Star has filed a reply, (Doc. 62). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Star's motion is denied.

## I.   RELEVANT FACTUAL BACKGROUND

This case arises from an automobile accident. Plaintiff alleges that, on June 6, 2021, Otto Salvador Celi, Sr., ("Celi") was driving eastbound on Interstate 10 in West Baton Rouge Parish, Louisiana, in a 2021 Volvo tractor owned by Gocci U.S. Corporation ("Gocci"). (*First Amended, Supplemental & Restated Petition for Damages* ("*FAP*") ¶ 4, Doc. 1-1 at 38.) According to Plaintiff, Celi approached traffic that was stationary, failed to control his vehicle, and ultimately struck the rear of a 2008 Freightliner and horse trailer driven by Casey Lee Burgett ("Burgett"). (*Id.* ¶ 5.)

The impact caused the death of four thoroughbred horses being transported in the horse trailer. (*Id.* ¶ 6, Doc. 1-1 at 39.) General Security insured three of the deceased horses under equine

mortality insurance policies. The horses were "Megatropolis BF" (insured for $150,000), "Breath of Fresheir" (insured for $32,500), and "Krewe Voodoo LOA" (insured for $75,000). (*Id.* ¶ 7.) Plaintiff claims that the value of the horses exceeded the insured amounts. (*Id.*) General Security paid its insured the policy limits and thus became subrogated to the rights against those responsible for the losses, totaling $257,500. (*Id.* ¶ 8.)

Plaintiff claims that Celi was negligent in a number of ways, and he was employed by Gocci and acting in the course and scope of his employment. (*Id.* ¶¶ 10–12.) Plaintiff thus claims Celi and Gocci are liable, along with their insurer, State National Insurance Co., Inc. (*Id.* ¶¶ 10–14, Doc. 1-1 at 39–40.)

Plaintiff also claims that the accident was caused by Star's negligence. (*Id.* ¶ 15, Doc. 1-1 at 40.) Star was the "intermediary broker of the load being hauled by Celi and Gocci . . . at the time of the accident . . . ." (*Id.*) General Security claims Star was negligent in how it chose Gocci. Specifically, Star's alleged negligence included:

> Choosing to hire a carrier such as Gocci . . . that used improperly equipped trucks and/or which failed to equip their vehicle with safety features which were available, common used in the transportation industry, and could have prevented or mitigated the collision; . . . that allowed its drivers to operate large commercial motor vehicles on public roadways while distracted and/or fatigued; . . . that used drivers including . . . Celi . . . who were insufficiently qualified or trained to use the equipment provided to them and thus unable to safely navigate the required transportation routes; . . . that failed to train its drivers in hazard perception, crash avoidance, and defensive driving; . . . that failed to ensure that its drivers had the knowledge and skills necessary to operate a commercial motor vehicle safely; . . . that failed to properly supervise its drivers; . . . with a focus more on pricing and/or on-time performance instead of roadway safety; . . . which had only been in operation for a relatively short period of time and, thus, did not have a long record to evaluate for safety; . . . . with whom it had never previously contracted, and to execute contractual retention of them on the very day the subject load was to be picked up for delivery; and [ ] [c]hoosing to hire improperly and/or insufficiently qualify and/or investigate a carrier

> such as Gocci . . .before hiring them to transport the subject load in this case.

(*Id.* ¶ 15, Doc. 1-1 at 40–41.) Star also had a liability policy with Lloyd's, and Plaintiff claims that Star and Lloyd's are liable *in solido* for the accident. (*Id.* ¶¶ 16–18, Doc. 1-1 at 41–42.)

Star now seeks summary judgment on two grounds: (1) Plaintiff's claims against Star are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501; and (2) Plaintiff cannot establish that Star was negligent in a way that caused the accident. (Doc. 36 at 1.)

## II.  RULE 56 STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[ ] [ ] citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.'" *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary

judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex Corp.*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (cleaned up). The non-mover's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (cleaned up).

Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (cleaned up).

4

III.  **DISCUSSION: PREEMPTION**

  A. **Parties Arguments**

  1. *Star's Original Memorandum (Doc. 36-1)*

First, Star argues that the Supreme Court has not yet resolved whether the FAAAA preempts state common law claims against brokers, but the Supreme Court has interpreted the statute broadly and has found that a nearly identical provision in the ADA preempted state common law claims. (Doc. 36-1 at 6–7.) Further, circuits are currently split on whether the FAAAA preempts state law claims against a broker for negligent hiring and/or selection of carriers, but Star urges this Court to adopt the position of the Seventh and Eleventh Circuits, which found preemption. (*Id.* at 8–11 (citing *Aspen Am. Ins. Co. v. Landstar, Inc*., 65 F.4th 1261 (11th Cir. 2023); *Gauthier v. Hard to Stop LLC*, No. 22-10774, 2024 WL 3338944 (11th Cir. July 9, 2024), *cert. denied sub nom. Gauthier v. Total Quality Logistics, LLC.*, 220 L. Ed. 2d 387 (Jan. 13, 2025); *Ye v. GlobalTranz Enters.*, 74 F.4th 453 (7th Cir. 2023).) "The Louisiana Western District and the Louisiana Third Circuit have also held state law tort claims against a broker are preempted by the FAAAA." (*Id.* at 11–12.) Numerous other Courts have found the same. (*Id.* at 11 & n.3 (collecting cases).) Further, Star urges that the Safety Exception to the preemption provision does not apply, and Star relies on the same cases here for this proposition. (*Id.* at 13–16)

  2. *Plaintiff's Opposition (Doc. 58)*

Plaintiff responds that the FAAAA does not preempt state law negligence claims against brokers. (Doc. 58 at 9.) "Congress did not express a clear legislative intent to preempt . . . [such] claims against brokers, and Congress also chose not to create a substitute federal cause of action for claims against negligent brokers." (*Id.*) Alternatively, the claims fall within the Safety Exception. (*Id.*)

Elaborating, Plaintiff acknowledges that this issue is *res nova* in this district, but there are four different views in the jurisprudence. (*Id.* at 10.) Louisiana federal courts are split; the Eastern District has found that there is preemption and that the Safety Exception does not apply, and the Western District has found such claims fall within the safety exception. (*Id.* citing *Bailey v. Progressive Cnty. Mut. Ins. Co.*, No. 22-5161, 2024 WL 3845966, at *4 (E.D. La. Aug. 16, 2024) (Morgan, J.); *Bertram v. Progressive Se. Ins. Co.*, No. 19-1478, 2021 WL 2955740 (W.D. La. July 14, 2021) (Cain, J.)).) The Louisiana Third Circuit Court of Appeal has "rejected the notion of preemption of similar claims." (*Id.* at 10–11 (citations omitted).) The Louisiana Third Circuit relied on a Ninth Circuit decision—*Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020)—which Plaintiff discusses at length. (*Id.* at 11–12.) Plaintiff relies on the Congressional intent behind the FAAAA as expressed in *Miller*, namely that the law "exists for economic deregulation, not to deprive a state of its ability to regulate the safety of its roads, including through personal injury claims against brokers." (*Id.* at 13.)

Plaintiff next turns to the fact that there is no clear legislative intent to preempt state law negligent hiring claims against brokers. (*Id.* at 14.) Plaintiff emphasizes that preemption is not presumed, and, if there are two reasonable ways of interpreting the law, the Court must accept the one that does not find preemption. (*Id.*)

Plaintiff then argues that there is no substitute federal cause of action against brokers. (*Id.* at 15.) The Eighth Circuit has recognized that, in such cases, it is doubtful that Congress intended the federal statutes to provide the exclusive cause of action. (*Id.* citing *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 252 (8th Cir. 2012).) Likewise, the Fifth Circuit has said that the "failure to provide any federal remedy for persons injured by [negligent] conduct makes it difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by

illegal conduct. (*Id.* (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338 (5th Cir. 1998).)

Plaintiff emphasizes that the Fifth Circuit found in *Hodges* that the Airline Deregulation Act

("ADA") did not preempt simple negligence claims against the airline, and the ADA was the basis

for the FAAAA. (*Id.*; *see id.* at 15–16 (citing *Ubaldo v. F&A Border Transp., LLC*, No. EP-24-

CV-47-KC, 2024 WL 1904545 (W.D. Tex. May 1, 2024)).)

Plaintiff then contends that the Fifth Circuit jurisprudence suggests no preemption. Plaintiff

here relies on *VRC LLC v. City of Dallas*, 460 F.3d 607 (5th Cir. 2006), which stated that the safety

exception should be broadly construed. (*Id.* at 17.) Plaintiff also relies on *Hodges*, discussed above.

(*Id.* at 18–19.)

Following this, Plaintiff argues that the safety exception applies, for the reasons given by

the Western District in *Bertram,* the Louisiana Third Circuit, and *Miller*. (*Id.* at 19–22.)

### 3.   *Star's Reply. (Doc. 62)*

Star begins its reply:

> With regard to FAAAA preemption, the parties agree that the United
> States Supreme Court, Fifth Circuit, and Middle District have not
> addressed the present issue. They also agree the Western and
> Eastern Districts have reached contrary findings. However, Star
> Transport urges this Court to find that the most persuasive argument
> is the analysis from both the 7th and 11th Circuit Federal Courts –
> the current majority holding.

(Doc. 62 at 1 (citation omitted).)

Star then says, preliminarily, that several cases cited by Plaintiff involve complete

preemption, not ordinary preemption like the one advanced by Star. (*Id.*) The latter is an

affirmative defense to defeat state law claims based on the supremacy of federal law. (*Id.* at 1–2.)

Further, *Hodges* is distinguishable because that case involved an "air carrier," not an "air broker,

travel agent, online booking service, or the like." (*Id.* at 2.) Further, Star had no "contract of

carriage between the passenger or shipper and the airline." *Id.* Likewise, *VRC* is not controlling, as that case involved the "exercise of 'state police power'" intended to be "responsive to safety concerns[;]" which is not the case with an ordinary negligence claim brought under Louisiana Civil Code article 2315. Instead, Star urges the Court to adopt Judge Morgan's position in *Bailey*, wherein she said:

> This Court agrees with the *Ye* court that, given Congress's choice to use "relating to" in the FAAAA Preemption Provision, its use of "with respect to" in the Safety Regulatory Exception "implies a different scope." Further, as discussed in *Ye*, brokers are not mentioned in § 14501(c)(2)(A), even though Congress explicitly listed broker services in the FAAAA Preemption Provision, which suggests the omission of brokers from the Safety Regulatory Exception was intentional. . . The relationship between [the broker's] alleged negligence and any motor vehicle is simply too attenuated to fall within the Safety Regulatory Exception.

(*Id.* at 5 (quoting *Bailey*, 2024 WL 3845966 at *3 (footnotes omitted)).)

## B. Applicable Law

### 1. FAAAA and Preemption Generally

The FAAAA provides in relevant part

**(c) Motor carriers of property.—**

**(1) General rule**.--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). "Thus, to establish preemption, a party must show both that (1) a state enacted or attempted to enforce a law; and (2) the state law relates to broker rates, routes, or

services, or has a significant economic effect on them." *Farfan v. Old Dominion Freight Line, Inc.*, 744 F. Supp. 3d 763, 767 (S.D. Tex. 2024).

"The FAAA[A] also contains a safety exception to this general preemption provision. The safety exception provides that the express preemption provision 'shall not restrict the safety regulatory authority of a State with respect to motor vehicles.'" *Id.* (quoting 49 U.S.C. § 14501(c)(2)(A) (emphasis omitted)).

The question before the court is whether the FAAAA preempts the negligence claims against Star. "To determine this, the Court must answer two questions: (1) does the preemption provision apply, and (2) does the safety exception nevertheless prevent preemption. While the Fifth Circuit does not appear to have addressed this issue, there is varying support for both parties' positions here." *Id.*

*Farfan* quoted *Bertram* to describe the "three distinct positions taken by courts on this issue":

> The **first group of courts found no FAAAA preemption of personal injury claims against brokers based on the conclusion that negligent hiring claims are not sufficiently "related to" the services of a broker.** *See, e.g., Scott v. Milosevic*, 372 F. Supp. 3d 758, 769 (N.D. Iowa 2019); *Mann v. C.H. Robinson Worldwide, Inc.*, 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017). **The second group of courts rejected FAAAA preemption of common law negligence claims based on the safety regulatory exception.** *See, e.g., Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020); *Lopez v. Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 512 (N.D. Tex. 2020); *Popal v. Reliable Cargo Delivery, Inc.*, 2021 WL 1100097 (W.D. Tex. Mar. 10, 2021); *Grant v. Lowe's Home Ctr.*, 2021 WL 288372, at *3 (D.S.C. Jan. 28, 2021). Finally, the **third group of courts have found that negligence claims against freight brokers are preempted under the FAAAA and do not fall within the safety exception.** *See, e.g., Gillum v. High Standard, LLC et al.*, 2020 WL 444371 (W.D. Tex. Jan. 27, 2020); *Loyd v. Salazar*, [416 F. Supp. 3d 1290, 1295–96 (W.D. Okla. 2019)]; *Creagan v. Wal-Mart Trans.*, LLC, 354 F. Supp. 3d 808, 812 (N.D. Ohio 2018).

*Id.* at 767–68 (quoting *Bertram*, 2021 WL 2955740, at *2). Elaborating on these positions, the Southern District of Texas described the various positions taken by the federal circuits:

> In total, three Circuits have addressed the issue of whether negligent hiring claims against brokers are preempted. On the first step of the analysis, they all found that the preemption provision applied. In other words, they found that negligent hiring claims against a broker are in fact preempted as such claims relate to "rates, routes, and services" of the broker that fall under § 14501(c)(1). On the second step, however, the Circuits are split on whether these kinds of common law claims fall within the safety exception. While the Ninth Circuit found that the negligent-hiring claims do fall within the safety exception (and thus the claims are not preempted), the Seventh and Eleventh Circuits found that these claims do *not* fall within the safety exception (and thus the claims are preempted). *Compare Miller v. C.H Robinson Worldwide, Inc.*, 976 F.3d 1016, 1021-25 (9th Cir. 2020) (holding that the safety exception applies in negligence cases stemming from motor vehicle accidents) *with Ye v. GlobalTranz Enterprises*, 74 F.4th 453 (7th Cir. 2023) (finding that "the connection here—between a broker hiring standard and motor vehicles—is too attenuated to be saved under § 14501(c)(2)(A)"); *Aspen American Insurance Company v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268 (11th Cir. 2023) (holding that although Plaintiff's claims implicated an exercise of Florida's safety regulatory authority, that authority was not exercised "with respect to motor vehicles").

*Id.* at 768.

*Farfan* then looked to the first question and found that the plaintiffs' negligence claim fell within the preemption clause:

> On the first prong, the Court here finds that Plaintiffs' negligent hiring claim is covered by the preemption provision because they sufficiently relate to "rates, routes, and services" of the broker that fall under § 14501(c)(1). Essentially, Plaintiffs claim that Old Dominion negligently arranged for Just Van to transport the shipment, causing the motor vehicle accident at issue. This claim has more than a tenuous relationship to broker services. Rather, the relationship is direct, and consequently, Plaintiffs' negligence claim is preempted by § 14501(c)(1). This conclusion is in line with each of the three Circuits addressed above, as well as two recent Texas

> cases on the issue. *See Hamby v. Wilson*, No. 6:23-CV-249-JDK,
> 2024 WL 2303850 (E.D. Tex. May 21, 2024); *Morales v. Ok Trans,
> Inc.*, No. 2:19-CV-00094, 2024 WL 3223675 (S.D. Tex. May 29,
> 2024).

*Id. See also Bertram*, 2021 WL 2955740, at *4 (finding that the negligence claims related to brokerage services and were thus preemption applied).

This leaves only the second issue: whether the safety exception applies to save Plaintiff's claims. The Court will provide a close look at both positions taken by the caselaw before stating the Court's own view of the matter.

## 2. *Cases Holding that Safety Exception Does Not Apply to Common Law Tort Claims*

*Farfan* and *Bailey* concluded that the safety exception does not apply. *Farfan* started "with the text." *Farfan*, 744 F. Supp.3d at 769 (citing *BedRoc Ltd., v. United States*, 541 U.S. 176, 183 (2004) ("[The] inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (citations omitted)). Again, the Safety Exception provided:

> [Section 14501(c)(1)] shall not restrict the **safety regulatory authority of a State with respect to motor vehicles,** the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization[.]

*Id.* (quoting 49 U.S.C. § 14501(c)(2)(A) (emphasis added)). *Farfan* adopted the reasoning from Seventh Circuit's decision in *Ye*:

> [T]he Court finds the analysis by the Seventh Circuit in *Ye* to be most persuasive. The *Ye* court adheres most closely to the statute's text. In *Ye*[,] the Seventh Circuit determined that the phrase "with respect to motor vehicles" "massively limits the scope" of the motor-vehicle-safety exception, requiring a "direct link between a state's law and motor vehicle safety." 74 F.4th at 460 (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261–62[ ] (2013)). The court recognized that the phrase "with respect to motor

vehicles" narrows "the scope of the exception to those laws concerning 'a vehicle, machine, tractor, trailer, or semitrailer . . . used on a highway in transportation.' " *Id.* (citing 49 U.S.C. § 13102(16) (defining "motor vehicle")). Indeed, the Supreme Court has interpreted "with respect to" to mean "direct relation to, or impact on." *See Presley v. Etowah Cnty. Comm'n*, 502 U.S. 491, 506 [ ] (1992); *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 720 [ ] (2018). Granted, in those cases, the Court interpreted the phrase in a different statute. Regardless, the ordinary meaning of "with respect to" suggests that a state law must have a direct link to motor vehicles to fall within the exception. *See Aspen*, 65 F.4th at 1271.

Here, there is no direct link between motor vehicle safety and Old Dominion's alleged negligence in brokering the load at issue to Just Van. As discussed above, Plaintiffs allege that Old Domino [sic] was negligent in selecting Just Van to transport the load—not that Old Dominion itself violated any law or regulation directly related to a motor vehicle, or even that Old Dominion is the owner or operator of any vehicle at issue. At most, Old Dominion's link to motor vehicle safety is several steps removed: Old Dominion brokered the load to Just Van, who in turn hired Anduju as the driver, who in turn drove negligently. Consequently, the Court finds that the relationship between Old Dominion's alleged negligence and any motor vehicle accident caused by Anduju is too attenuated to fall within the motor-vehicle-safety exception. *See Ye*, 74 F.4th at 461–62 (finding no direct relationship between negligent brokering claim and motor vehicle safety where Defendant's negligent hiring of the motor carrier resulted in the motor carrier's negligent entrustment of a motor vehicle to a negligent driver who, in turn, caused a collision that resulted in the decedent's death.); *Gillum v. High Standard, LLC*, No. SA-19-CV-1378, 2020 WL 444371, at *5 (W.D. Tex. Jan. 27, 2020) (finding negligent hiring claim did not fall within the motor-vehicle-safety exception where the Defendant did not own or operate any vehicle subject to the state's regulatory authority); *Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1298-1300 (W.D. Okla. 2019) (same); *Volkova v. C.H. Robinson Co.*, No. 16-C-1883, 2018 WL 741441, at *4 (N.D. Ill. Feb. 7, 2018) (same).

As the *Ye* opinion noted, brokers and motor vehicles share only somewhat of a relationship "at a higher level of generality." 74 F.4th at 462. However, the text of § 14501(c)(2), which serves as the best evidence of Congress's intent, evinces that Congress intended to limit the motor-safety-exception to "state safety regulations directly related to 'motor vehicles.' " *Ye*, 74 F.4th at 462. Plaintiffs' negligent brokering claim lacks that direct relationship. Moreover,

> as *Ye* points out, brokers are *not* mentioned in § 14501(c)(2)(A), even though Congress expressly listed broker services in § 14501 (c)(1)'s express preemption provision—suggesting the exclusion of brokers in § 14501(c)(2)(A) was intentional. *See id.* at 461. If Congress intended the motor-vehicle-safety exception to apply to brokers, it could have said so in § 14501(c)(2). But Congress did not specifically apply the motor-vehicle-safety exception to brokers—even though it specifically "excepted state laws for motor vehicle safety, cargo loads, and motor carrier insurance." *Ye*, 74 F.4th at 461. As such, this Court declines to read brokers into the language of the § 14501(c)(2) exception.

*Id.* at 769–70. Thus, the *Farfan* court found that "Plaintiffs' negligent hiring claims against [the broker were] preempted by federal statute." *Id.* at 770 (citing *Hamby*, 2024 WL 2303850 (adopting the reasoning from *Ye* and *Aspen* and concluding "that § 14501 's express language preempts a negligent brokering claim and that the safety exception does not save the claim from preemption")); *see also Bailey*, 2024 WL 3845966, at *3 (agreeing with *Ye* because (1) "given Congress's choice to use 'relating to' in the FAAAA Preemption Provision, its use of 'with respect to' in the Safety Regulatory Exception 'implies a different scope[;]'" and (2) "brokers are not mentioned in § 14501(c)(2)(A), even though Congress explicitly listed broker services in the FAAAA Preemption Provision, which suggests the omission of brokers from the Safety Regulatory Exception was intentional." (quoting *Ye*, 74 F.4th at 465)).

### 3. *Cases Holding that Safety Exception Does Apply to Common Law Tort Claims*

Conversely, in *Bertram*, the Western District of Louisiana found that the Safety Exception was applicable to save common law tort claims. 2021 WL 2955740, at *6. *Bertram* started with certain interpretative principles and how those principles apply to the purpose of the FAAAA:

> "In all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424,

13

432 [ ] (2002). Consequently, there are limits to the FAAAA's preemption. *Pelkey*, 569 U.S. at 260.

> "The principal purpose of the FAAAA was 'to prevent States from undermining federal deregulation of interstate trucking through a 'patchwork' of state regulations." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 644 (9th Cir. 2014). The Supreme Court has cautioned that the FAAAA's preemption clause should not be read with "an 'uncritical literalism,' else 'for all practical purpose preemption would never run its course.' " *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-656 [ ] (1995). When interpreting the FAAAA "the breadth of the words 'related to' does not mean the sky is the limit." *Dan's City Used Cars*, 569 U.S. at 260. The Supreme Court specifically noted that the FAAAA does not preempt state laws affecting carrier prices, routes, and services "in only a tenuous, remote, or peripheral . . . manner." *Id.* FAAAA preemption is limited to state laws "with a 'significant impact' on carrier rates, routes, or services," *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020).

*Id.* at *3. The Court reiterated these points when addressing the Safety Exception:

> A preemption inquiry begins with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *City of Columbus v. Ours Garage and Wrecker Servs., Inc.*, 536 U.S. 424, 426 (2002). In fact, the FAAAA expressly provides that the preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2).

*Id.* at *5. Judge Cain was "persuaded by the Nineth Circuit's rationale" in *Miller*:

> In *Miller v. C.H. Robinson Worldwide, Inc.*, the Ninth Circuit concluded that the FAAAA's safety regulatory exception encompasses common-law tort claims. 976 F.3d at 1026. This holding was primarily based on the tendency of courts to construe the safety exception broadly and Congress' purpose for enacting the FAAAA. *Id.* First, the Fifth Circuit has emphasized that "case law . . . has on the whole given a broad construction to the safety regulation exception." *VRC LLC v. City of Dallas*, 460 F.3d 607, 612 (5th Cir. 2006). Thus, reliance on *Gillum v. High Standard, LLC et al.* is misplaced. 2020 WL 444371 (W.D. Tex. Jan. 27, 2020).

14

Secondly, the Ninth Circuit emphasized that when enacting the FAAAA, "Congress was primarily concerned with the States regulating economic aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws." *Miller*, 976 F.3d at 1026. Thus, "Congress's 'clear purpose' in enacting the safety exception, then, was 'to ensure that its preemption of States' economic authority over [that industry] . . . not restrict the States' existing power over 'safety.' " *Ours Garage*, 536 U.S. at 439 (quoting 49 U.S.C. § 14501(c)(2)(A)). And according to the Ninth Circuit, "[t]hat power plainly includes the ability to regulate safety through common-law tort claims." *Miller*, 976 F.3d at 1026. Furthermore, the Second Circuit has declared that "[h]istorically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as 'a critical component of the States' traditional ability to protect the health and safety of their citizens.' " *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 544 (1992)).

Finally, the Ninth Circuit noted in *Miller* that "nothing in the FAAAA's legislative history . . . suggests Congress intended to eliminate this important component of the States' power over safety." *Miller*, 976 F.3d at 1026. The court cited a House Conference Report, which noted that a key interest group abandoned its opposition to the FAAAA subject to "some conditions that would allow regulatory protection to continue for non-economic factors, such as . . . safety," and that the conferees "attempted to address these conditions" by carving out the various exceptions in § 14501(c)(2). H.R. Conf. Rep. 103-677, at 88. This broad reference to "safety," the court thought, "cuts against the narrow construction [defendant] advances." *Miller*, 976 F.3d at 1026 (citing *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 480 (9th Cir. 1995) (observing that "safety rationale[s] underl[ie] the law of tort")).

*Id.* at *5–6. The Western District concluded:

This Court is more persuaded by the *Miller* court's rationale. The Court agrees that Plaintiffs' negligence claims are related to brokerage services but finds that Plaintiffs' negligence claim falls within the safety exception. This exception provides that the FAAAA "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(1)(A). As previously noted, in passing the FAAAA, Congress was primarily concerned with the States regulating economic aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws. *Su*, 903 F.3d at 960. Congress's "clear

15

purpose" in enacting the safety exception, then was "to ensure that its preemption of States' economic authority over [that industry] . . . 'not restrict' the States' existing power over safety." *Ours Garage*, 536 U.S. at 439 [ ] (quoting 49 U.S.C. § 14501(c)(2)(A)). Accordingly, Defendant's Motion to Dismiss will be denied.

*Id.* at *6.

### C. Analysis

Having carefully considered the matter, the Court finds most persuasive the Ninth Circuit's decision in *Miller*, as adopted by the Western District of Louisiana in *Bertram*. The Court bases this decision on the following: (1) the general principle that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress[,]" *id.* at *5 (citing *City of Columbus*, 536 U.S. at 425); (2) the similar principle that courts have a "tendency . . . to construe the safety exception broadly[,]" *id.* (citing *VRC LLC*, 460 F.3d at 612); (3) the fact that the purpose of the FAAAA is to "regulat[e] economic aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws[,]" *id.* (quoting *Miller*, 976 F.3d at 1026); and (4) the fact that the purpose behind the Safety Exception is to "not restrict the States' existing power over 'safety[,]'" which "plainly includes the ability to regulate safety through common-law tort claims[,]" *id.* (first quoting *Ours Garage*, 536 U.S. at 439; and then quoting *Miller*, 976 F.3d at 1026). Further, the Court finds that the strict construction given to the FAAAA by *Bailey* and *Farfan* to be unpersuasive, as these courts rely on a hyper-technical reading of the statute and ignore the interpretative and preemption principles and legislative intent highlighted by *Bertram*.

Consequently, the Court finds that, while the FAAAA's preemption clause applies to Plaintiff's negligence claim against Star, that claim falls within the Safety Exception. Thus, the negligence claim survives, and Star's motion will be denied on this issue.

IV.    **DISCUSSION: NEGLIGENCE**

    **A.  Parties' Arguments**

Star argues in the alternative that Plaintiff cannot prove its negligence claim against Star. (Doc. 36-1 at 17.) Star owed no duty under federal law or regulation as a broker. (*Id.*) Motor carriers have substantial obligations under federal regulations, but the obligations of brokers are minimal. (*Id.*) Further, there are no published cases imposing liability on a broker for negligence. (*Id.* at 17–18.) Star maintains that allowing negligence claims against brokers "would effectively dictate through state common law that a broker now has a duty to perform the services of a motor carrier and ensure that a third-party motor carrier's driver is a safe driver," which would "explicitly impose new services upon a broker which do not have to be performed under the" federal regulations." (*Id.* at 19.) Even if there is a duty, says Star, there is no evidence of a breach. (*Id.*) Star cites the facts that: (a) Gocci had no prior accidents before this one or after; and (b) Star ensured Gocci was in operation for a year, had active insurance, and had no safety rating (i.e., not an unsatisfactory or conditional rating). (*Id.* at 19.)

Plaintiff responds first that "[t]here is no doubt that Gocci and Mr. Celi were negligent." (Doc. 58 at 2 (emphasis omitted).) "Star rushed the engagement of Gocci[,] . . . performed only a perfunctory safety investigation into that selection, and hired a carrier (for the first time) that caused a serious motor vehicle accident in Baton Rouge." (*Id.* at 2–3.) Plaintiff cites the fact that, though Star was under contract with about 4,000 carriers, it contracted with Gocci for this job and that that was the first time it engaged Gocci. (*Id.* at 4.) Further, the safety rating Star relied on was faulty, as Gocci had the same rating before and after this terrible accident. (*Id.* at 5–6.) Plaintiff says Star ignored "red flags," such as the high number of inspections and the fact that Gocci had a potential for a high number of double brokering freight (which is illegal and indicative of fraud).

(*Id.* at 6 (emphasis omitted).) Further, the corporate address for Gocci was a residential apartment in Illinois. (*Id.* at 7.) Lastly, Star hired a carrier whose owner did not know that federal law required an alcohol test within eight hours of the accident, which is important because in this case the driver only complied with Gocci's 24-hour rule. (*Id.* at 7–8 (citing, inter alia, 49 U.S.C. § 382.303(a)(2)).) In sum:

> Wielding a perfunctory inquiry into a third-party profile system as a shield from negligence while ignoring obvious red flags contained in that profile, together with suspect differing corporate addresses, form a company created at the onset of Covid, in a rush to get alcoholic drinks on the road, despite there being other known carriers to select from, is not a reasonable decision. The facts now known are certainly enough to present to a jury to determine whether Star breached its duty.

(*Id.* at 9 (emphasis omitted).)

In reply, Star goes through each of Plaintiff's exhibits to demonstrate why, in its view, Star was not negligent. (Doc. 62 at 5.) The fact that Star touts its carriers as "highly vetted, insured and ELD compliant" and that it has 4,000 carriers under contract is immaterial to the question of liability. (*Id.* at 5–6.) Gocci's "none" safety rating is also irrelevant, as "[a] motor carrier is not required to be reviewed by the Federal Motor Carrier Safety Administration." (*Id.* at 6.) Likewise, Gocci's residential address or later different address is not indicative of negligence on Star's part. (*Id.*) Star's failure to know federal regulations on drug testing policies of motor carriers is also immaterial. (*Id.*) Finally, Plaintiff's other exhibits do not get it across the finish line to survive summary judgment. (*Id.* at 7.)

### B. Applicable Law

Louisiana Civil Code article 2315 provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." "In Louisiana, negligence claims are governed by a duty-risk analysis under . . . article 2315." *Jordan v. Gautreaux*, 593 F.

Supp. 3d 330, 368 (M.D. La. 2022) (deGravelles, J.) (citing *Newsome-Goudeau v. Louisiana*, No. 17-909, 2020 WL 5665615, at *6 (W.D. La. Sept. 22, 2020) (Foote, J.)); *see also Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 382–83 (M.D. La. 2022) (deGravelles, J.) ("'The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under' Article 2315." (quoting *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So.2d 627, 632–33)). Under this analysis, a plaintiff must prove five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Imani*, 614 F. Supp. 3d at 383 (quoting *Lemann*, 923 So. 2d at 633). "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." *Id.* (quoting *Lemann*, 923 So. 2d at 633).

On the question of duty, Louisiana law provides that, "when a contract exists between two parties for one party to provide a service to the other, but 'it is not alleged that any specific contract provision duty was breached, and instead a general duty to perform work in a prudent and skillful manner, the claim arises in tort." *Cenac v. Orkin, L.L.C.*, 941 F.3d 182, 195 (5th Cir. 2019) (cleaned up). Furthermore, "[i]f a person undertakes a task which he has no duty to perform, he must perform that task in a reasonable and prudent manner. Negligent breach of a duty which has been voluntarily or gratuitously assumed may create civil liability." *Id.* (citation omitted).

"The first element [of the duty-risk analysis] is usually a judge question, and the other four . . . are usually jury questions unless reasonable minds could not differ." *Fowler v. Roberts*, 556 So. 2d 1, 4–5 (La. 1989), *reh'g granted on other grounds and original opinion reinstated as*

*supplemented*, 556 So. 2d at 13 (La. 1990) (citing D. Robertson, W. Powers, Jr. & D. Anderson,

Cases and Materials on Torts 83–84 (1989); 1 Frank L. Maraist & Thomas C. Galligan, Jr.,

*Louisiana Tort Law* § 6.01 (2025) ("Answering that question . . . . [of] whether the conduct . . . at

issue presents an unreasonable risk of harm . . . .depends upon the facts of the particular case and

all the relevant factors. Of course, if no issue of fact is presented and reasonable minds could not

disagree, summary judgment might be appropriate for either the defendant or the plaintiff." (citing,

*inter alia*, *Meaux v. Wendy's Int'l, Inc.*, 69 So. 3d 412 (La. 2011) (factual issues precluded

summary judgment)). That is, "[w]hile duty is a question of law and may be an appropriate basis

for summary judgment, a court should grant summary judgment on the issue of no duty '"only

when it is clear no duty exists as a matter of law; and, the facts or credibility of the witnesses are

not in dispute."'" Maraist & Galligan, *supra*, § 5.02 (quoting *Norman v. Michael A. Shelton Enter.,

Inc.*, 2018-1000 (La. App. 3 Cir. 5/29/19), 317 So. 3d 559 (quoting *Parish v. L.M. Daigle Oil Co.,

Inc.*, 742 So. 2d 18, 20 (La. App. 3 Cir. 1999))).

### C. Analysis

Having carefully considered the matter, the Court will deny Star's motion on this issue. In

sum, Plaintiff has presented sufficient evidence of Star's negligence to survive summary judgment.

Specifically, Plaintiff provides adequate proof from which a reasonable jury could

conclude that Star negligently hired Gocci and that this negligence caused the accident at issue in

this case. For instance, even though Star maintained thousands of contracts with motor carriers, it

chose to use Gocci for the first time on the same day that the load was to be picked up by Star's

carrier. (*General Security's Statement of Material Facts* ("*SMF*") ¶ 1–4, Doc. 58-17.)[1] Further,

---

[1] Local Civil Rule 56 requires that a motion for summary judgment "be supported by a separate, short, and concise statement of material facts, each set[ting] forth in separately numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." M.D. La. Civ. R. 56(b)(1). A party opposing the motion

Gocci provided Star with a residential apartment address as its corporate address, which, as Plaintiff highlights, was arguably a red flag. (*Id.* ¶ 7.) Moreover, Gocci's safety rating one year after the car accident at issue remained "None," which calls into question Star's reliance on that rating system for its due diligence. (*See* Pl. Ex. 8, Doc. 58-10 at 1; Pl. Ex. 14, Star's Resumed 1442 Dep. 37, Doc. 58-16.) Gocci's corporate deponent was also unaware of federal requirements for post-accident drug and alcohol testing, and Gocci did not comply with those requirements after the accident. (*SMF* ¶¶ 13–14, Doc. 58-17). A reasonable jury could conclude from all of this that Star negligently hired Gocci rather than a more experienced and knowledgeable motor carrier and that this negligence contributed to the accident.

Star makes various arguments to dispute liability, including that it was not required to hire a carrier with a corporate address or one which knew specific regulations. But that does not gainsay the fact that a factfinder could conclude, based on the totality of the circumstances, that Star failed to act as a reasonably prudent broker in hiring Gocci despite these problems. Ultimately, Star's liability will be a question for the jury at trial.

Likewise, Star advances policy arguments for why it owed no duty to Plaintiff's insured. But, here, it is not "clear no duty exists as a matter of law," particularly in light of Star's general duty under Article 2315 to act as a reasonably prudent broker under the circumstances, and it is

---

shall submit its own statement which must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule." *Id.* R. 56(c). Additionally, "[t]he opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule." *Id.* "A party replying to the opposition . . . shall submit with its reply a separate, short, and concise statement of material facts which . . . shall admit, deny or qualify such additional facts by reference to the numbered paragraphs of the opposing party's statement of material facts[.]" *Id.* R. 56(d). "[U]nless a fact is admitted," the party replying "shall support each denial or qualification by a record citation as required by subsection (f) of this rule." *Id.* Under subsection (f), "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. *Id.* R. 56(f).

  Here, Star failed to submit its own statement of material facts, and it failed to properly respond to General Security's *SMF.* (Doc. 58-17.) Consequently, all supported facts in the *SMF* are deemed admitted for purposes of this motion. *See.* M.D. La. Civ. R. 56(f).

certainly not the case that "the facts or credibility of the witnesses are not in dispute." *See* Maraist

& Galligan, *supra*, § 5.02 (citations omitted). Thus, summary judgment is not appropriate.[2]

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 36) filed by Defendants,

Star Transport Logistics, Inc., and Certain Underwriters at Lloyds, London Subscribing to Policy

No. 20GU306160-160 is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>June 4, 2025</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[2] The Court also notes that Professor Galligan has written brilliantly about the conflicting caselaw from Louisiana courts on the question of whether the judge or jury decides the issue of the scope of duty in the duty/risk analysis. *See* Maraist & Galligan, *supra*, § 502. Professor Galligan advocates for the following approach:

> So, recapping, who should decide what?
>
> The court should decide duty at a categorical level. That is, are there policy reasons to limit the general duty to exercise reasonable care? Here the court should consider the Green policies of tort law, any applicable Code articles or legislation, and jurisprudence.
>
> Next the jury should decide whether the defendant breached the appropriate standard of reasonable care. The jury should decide cause-in-fact. Thereafter, it should decide scope of liability or protection. Finally, if it gets that far the jury should determine damages.

*Id.* This is the same approach advanced by Justice Crain recently in *Evans v. Abubaker, Inc.*, 2023-00955 (La. 5/10/24), 384 So. 3d 853, 863–85 (Crain, J., concurring) ("'[I]t is important to separate the duty and scope of the duty questions because each has considerations unique to itself.' The former asks whether an entire category of defendants should be excluded from liability based on policy-driven factors. The latter narrows the analysis to the facts of the case at hand." (quoting *Doe v. McKesson*, 21-0929 (La. 3/25/22), 339 So.3d 524 (Crain, J., concurring)). It is the same one advanced by this Court in *Tredick v. Ekugbere*, No. 17-103, 2018 WL 5504157, at *4 (M.D. La. Oct. 29, 2018) (deGravelles, J.) ("Whether this particular defendant owed this particular duty to the plaintiff[ ] in this particular factual context is a mixed question of law and fact. . . . Thus, . . . legal causation is a question for the jury unless reasonable minds could not differ." (cleaned up)). This is an additional reason for denying Star's motion; policy considerations (such as the safety concerns governing the preemption analysis) counsel against a categorical denial of liability for brokers, and reasonable persons could differ on whether this broker owed a duty to this driver under these circumstances.